IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LILLIAM ARLEEN SEGUNDO-MENDEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY**, <br><br> Defendant. | Civil No. 22-1191 (BJM) |

**OPINION AND ORDER**

Lilliam Arleen Segundo-Mendez ("Segundo") seeks review of the Commissioner's finding that she is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Segundo contends the Administrative Law Judge ("ALJ") interpreted raw medical data, formulated opinions as to the effect on Segundo's residual functional capacity ("RFC") and that the ALJ's finding of not disabled is not supported by substantial evidence. Docket No. ("Dkt.") 15. The Commissioner opposed. Dkt. 18. This case is before me on consent of the parties. Dkts. 5-7, 16. After careful review of the administrative record and the briefs on file, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's RFC[1] and determines at Step Four whether the impairments prevent the claimant from doing the

---

[1] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Sec'y of Health & Hum. Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

**BACKGROUND**

The following is a summary of the pertinent parts of the Social Security transcript ("Tr.").

Segundo was born on February 9, 1969, completed a master's degree in technology and technology management, can communicate in the English language, and last worked as a control network operator from 2001 to 2010.[2] Segundo applied for disability insurance benefits on October 3, 2016, claiming to have been disabled since June 19, 2012 (onset date) at age 43[3] due to fibromyalgia, carpal tunnel, anxiety and major depressive disorder. Tr. 334. She was last insured on December 31, 2016. Tr. 288, 321.

*Treating Physicians – Physical*

**Dr. Ricardo López López (Generalist)**

---

[2] Segundo had previously filed for disability and alleged an onset date of July 21, 2010. She was originally found to be disabled. Tr. 230. However, the Social Security Administration reviewed her case because there was a suspicion of fraud, as three individuals admitted to making false statement to the Social Security Administration in connection with claimants' applications for benefits. Tr. 242. Upon redetermination, Segundo was found not to be disabled on September 19, 2016. Tr. 242-56.

[3] Segundo was considered to be a younger individual (Tr. 33, 337, 356), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

Segundo began seeing Dr. López in February 2013 and progress notes go through January 2018. The notes are largely illegible. Dr. López diagnosed Segundo with dermatitis, migraine, urticaria, gastritis, muscle spasm, bronchial asthma, fatigue, anxiety, herniated discs and neuropathy. Tr. 197. Dr. López also did a depression screening test in October 2014 and found she was depressed. Tr. 142.

In November 2014, Dr. López did a Comprehensive Health Risk Assessment and noted that Segundo had moderate pain with treatment. He also noted that Segundo could bathe, dress, eat, transfer in and out of bed without any assistance. Tr. 148-49. In his review of her systems, Dr. López found that the respiratory, gastrointestinal, musculoskeletal, neurological and psychiatric systems were abnormal. Tr. 150. Specifically, he noted Segundo had herniated discs, gastritis, joint pain, and lumbalgia. Tr. 198. In his physical examination, again he noted Segundo had joint pain in her extremities and that she felt paresthesia – a burning or prickling sensation in her extremities. He also wrote Segundo had depression, not otherwise specified. Tr. 189. Prescriptions reflect that Segundo was being treated for bronchial asthma, and fatigue. Tr. 181-83.

In February 2015, Dr. Lopez noted Segundo was calm and alert. Tr. 200. In October 2015, Dr. López filled out an Attending Physician Statement For Disability Claims. He stated that Segundo "can only function in stressful situations and has a [sic] some interpersonal relationships (with noticeable limitations)." Tr. 209. He stated Segundo could sit for one hour, stand and walk intermittently. *Id.* She could also reach above shoulder level and operate a motor vehicle but could not climb. *Id.* She also could not perform repetitive movement of fingers or push/pull. *Id.* He advised Segundo to stop working in July 2010. Tr. 210. Her primary diagnosis were herniated discs, and low back pain. *Id.*

**Dr. Ruddy Guerra, M.D. (Neurology-Neurophysiology)**

On September 18, 2013, Seguro began seeing Dr. Guerra for muscle spam, bilateral carpal tunnel syndrome, arthritis, lumbar disc disease and fibromyalgia. She complained of general body pain, back pain that was moderate to severe, and worsened on exertion and emotional stress. Tr. 91. Medications were prescribed and a diagnostic imaging was ordered.

Progress notes from June to October 2014 state Segundo had some relief with medication and that the bone scan was normal. Dr. Guerra also noted that Segundo was under rheumatology care and being treated by Dr. Baez, who prescribed physical therapy. Tr. 89-90.

Segundo missed her subsequent follow-up appointment in April 2015. Tr. 94. She did however see Dr. Guerra in November 2015. Progress notes reflect she was feeling well and that she was complying and tolerating well the treatment.

The final progress note from October 2016 reflects that Segundo still complained of generalized body pain, cervical muscle spasms, low back pain and disc herniations at L4-L5 and L5-S1. Segundo reported recurrent daily dull, oppressive, cervical, dorsal and low-back pain of moderate to severe intensity, which was exacerbated on sustained postures and exertion. She reported relief when resting and some relief with medications. Dr. Guerra observed that Segundo's cranial nerves all seemed normal, and she had normal pinprick, vibration, soft touch and proprioception perceptions. Dr. Guerra also noted that there was tenderness to palpation in the cervical paraspinal area and ascending wings of trapezius muscle. Segundo also had normal finger to nose, heel to shin, and rapid alternating movements. Tr. 84-85.

**Dr. Pablo Baez/Centro de Terapia Física Renacer, Inc.**

Segundo went to physical therapy between November 2013 and September 2014. Segundo reported a lot of pain in the neck and mid-back area. Progress notes from 2013 reflect that Segundo had moderate muscle spasms in her upper trapezius and moderate inflammation in the neck and back area. Tr. 586. In 2014, Segundo continued with a lot of pain in her neck and mid-back and numbness in both hands. She also continued with moderate inflammation in the upper trapezius and had limitations in her range of motion. Tr. 581. However, an electromyography study for her upper extremities showed her muscle response was normal. Tr. 579.

**Dr. Jose R. Rodriguez Santiago (Rheumatology)**

Illegible progress notes range from February 2014 through May 2018.

**Doctor's Center Hospital**

Segundo was operated on her right colon for an adenocarcinoma on March 3, 2017. Tr. 599.

*Treating Physicians – Mental*

**Dr. Karen Soto Medina/Clínica Psiquiátrica de Manatí (Psychiatry)**

Segundo saw Dr. Soto from April 2012 through February 2017. Tr. 525-45. Dr. Soto treated Segundo for major depressive disorder. Segundo presented with normal gait, sat with a straight posture, and maintained eye contact with Dr. Soto. Her speech was coherent, logical, and

relevant. She expressed well thought out ideas. Her facial expression was of anxiety. She had good attention span and had the capacity to judge reality and their consequences. She was not suicidal or homicidal. Tr. 543-545. Dr. Soto's treatment included pharmacology and psychotherapy.

In February 2013, Dr. Soto noted that Segundo's attention span was impaired and that her intellectual capacity was below average. Tr. 542. However, in May 2013, Dr. Soto again found Segundo conserved an attention span. Tr. 541. Progress notes from the end of 2013 reflect that Segundo was alert, was feeling sad and restless but her speech was coherent and logical. Tr. 537. In a mental functional capacity assessment, Segundo reflected moderate limitations in her ability to understand and remember detailed instructions, and her ability to carry out those detailed instructions. She also had moderate limitations in her ability to respond appropriately to changes in the work setting. Her emotional conditions worsen under stress while at work. Tr. 559-60.

Progress notes from 2014 show that Segundo was feeling anxious, and restless, but still was coherent, logical, and alert. Tr. 533-36. Segundo only saw Dr. Soto once in 2015. Segundo was worried about her ex-husband who was constantly threatening her. Otherwise, Dr. Soto found her to be coherent, logical, and not suicidal. Tr. 532. In 2016, Segundo was still anxious, restless and complained of pain. Dr. Soto noted that Segundo's speech continued to be coherent and logical. Tr. 526, 531, 547.

**Dr. Raul Benitez Perez (Psychiatry)**

Segundo was treated by Dr. Benitez in September 2017. Among her reported symptoms, she noted difficulty concentrating, a lack of interest in daily activities, poor energy, constantly feeling sad, forgetting everything, being tired without a reason, feeling more irritable than usual, having problems socializing, crying, lack of sleep, lack of motivation, discomfort, pain and isolation/loneliness. Tr. 549.

On December 5, 2017, Dr. Benitez stated Segundo was disabled and her condition limited one or more of her major life activities. Tr. 672.

*Procedural History*

In a function report dated January 27, 2017, Segundo claimed that her conditions limited her ability to work because she was in chronic pain and could not get enough rest. She also claimed to have gastric and concentration problems, along with anxiety.

Her daily routine included waking up around 3:00 to 5:00 a.m., stretching, exercising, eating breakfast, taking her medicines, taking her son to school, reading, watching television, resting, and preparing dinner with her son. She could not take care of her personal needs, such as brushing her hair because her arms, shoulders, and hands hurt. She also claimed her conditions resulted in constantly needing to use the bathroom. However, she did not need reminders to take care of her personal needs or reminders to take her medicine. She prepared her own breakfasts and lunch, but she described them as simple meals that take her thirty minutes to make. Her mother prepared dinner every day. Segundo watered and took care of her plants and did laundry. She had to hire someone else or ask for help to do the rest of the household work. She drove her son to school. She did not handle money because she was forgetful. She went to church and sports activities in which her son participated but stated she barely attended social activities because she gets a lot of discomfort. However, she talked to her family every day. Her conditions affected how much she can lift, limited between five to ten pounds. She was unable to sit for too long. Her conditions also affected her vision, memory and concentration. She can walk for thirty minutes before needing to stop and pay attention for thirty minutes. She got along with authority figures and was never let go from a job. Tr. 441-50.

In a disability report dated September 5, 2017, Seguro claimed a change in her conditions. She stated she suffered from Stage III colon cancer, fibromyalgia, depression, neuropathy, and back pain. She was diagnosed with Stage III colon cancer on February 14, 2017 and had surgery on March 23, 2017. Tr. 452-459. Her neuropathy in hands and feet impacted her ability to care for herself. She had trouble sleeping due to racing thought and her mood changed due to her physical irritations. She also experienced lack of appetite, energy, motivation and overwhelming feelings on how she is supposed to live. Segundo spent most of her time at home and isolated herself as she feared additional conditions developing. She depended on her family and mother to help her to household chores and preparing meals. *Id.*

In another function report dated May 17, 2018, Segundo stated her generalized musculoskeletal pain caused her limitation to work. She did not have restful sleep and would wake up with stiffness and with memory and concentration problems. She had anxiety, depression, nausea, and excessive sweating. She still had severe pain in her back, neck and tingling in her hands and feet. Her daily activities varied each day. If she was able, she made her own breakfast, she stretched and walked, took her medications and rested as much as possible.

Segundo was still having side effects from the chemotherapy. She helped her son with schoolwork and fed her dog. She needed assistance with bathing and walking the dog. Segundo could not sleep without the help of medication. She made her own meals such as sandwiches, rice and frozen foods. She also did her laundry, cooking and cleaning for about an hour each day if her conditions allowed her to. Her son did all other housework or yardwork. She drove her son to and from school. She went to the store to buy food or clothes once a week for approximately two hours but also buys these items online. She could pay bills, count change, handle a savings account, and use a checkbook. She read and watched TV every day and went for a walk two or three times a week depending on her pain level. She spent time with her son and mother every day. She went to church on a regular basis unaccompanied. She noted that she could not lift more than 10 pounds or walk more than ten minutes before needing to rest. She could follow simple spoken instructions. She handled stress with medications, breathing exercises, and sleeping. Finally, she needed help from her mother and son when there were changes to her routine. Tr. 473-80.

Dr. J.A. Mojica Sandoz, a psychiatrist referred by the Disability Determination Unit, interviewed and evaluated Segundo on March 16, 2017. Dr. Mojica noted that Segundo showed little interest in her personal appearance. She was anxious and tense but did not have any difficulty formulating or elaborating ideas. Segundo's capacity to pay attention was somewhat impaired because Dr. Mojica had to repeat questions. Her concentration was also somewhat impaired but there was no significant impairment with her immediate, short-term, recent, or remote memory. Dr. Mojica noted that Segundo's judgment was not impaired. Tr. 603-07.

Dr. Nelson Colon interviewed and examined Segundo on March 17, 2017 for the purpose of an independent medical evaluation. There was no tenderness or spasms in the cervical and lumbar paraspinals. Tr. 609. Segundo walked with a rigid spine. Tr. 612. She was able to grip, grasp, pinch, finger-tap, button her shirt, pick up a coin and write. Tr. 613. There was some limitation in flexing forward and laterally. Tr. 614.

Dr. Luis Umpierre, a psychological consultant, reviewed the record and assessed on April 26, 2017, that Segundo had moderate limitations to understand, remember, or apply information. She also had moderate limitations when interacting with others, and moderate limitation with her ability to concentrate, adapt or manage herself. Tr. 648. He found Segundo's depression and anxiety could interfere with her capacity to engage in complex and detailed tasks, but she still

retained sufficient capacity to learn, understand, remember and execute simple instructions. She could sustain the pace and attention to function at work activities during a workday or workweek, without special help or supervision. She could also adjust to changes in work routine and could interact with public, coworkers and supervisors. Tr. 651-654.

Dr. Florentino Figueroa reviewed the record and assessed on July 14, 2017 that Segundo could lift and/or carry twenty pounds occasionally (cumulatively one-third or less of an eight-hour workday) (including upward pulling) and ten pounds frequently (cumulatively more than one-third up to two-thirds).[4] She could stand and/or walk with normal breaks for six hours, and sit with normal breaks for six hours. She could push and/or pull (including the operation of hand and/or foot controls) unlimitedly. Segundo could frequently climb ramps/stairs and occasionally climb ladders/ropes/scaffolds. She could frequently balance and kneel, and occasionally stoop (bend at the waist), crouch (bend at the knees), and crawl. She could reach any direction (including overhead) and feel (skin receptors) indefinitely but was limited in handling (gross manipulation) and fingering (fine manipulation). Segundo had no visual, communicative, or environmental limitations. Tr. 660-667. On August 16, 2017, new evidence was received but Dr. Figueroa found no more limitations should be added to the RFC. Tr. 669.

Seguro's claim was initially denied on August 23, 2017, with a finding that her conditions affected her ability to perform some work tasks but did not impede her from performing other jobs. Tr. 276. Segundo requested reconsideration (Tr. 280) and claimed that her conditions continued, and she was unable to sustain gainful work activity. Tr. 280-83.

On June 8, 2018, Dr. Wanda De Cardona affirmed Dr. Umpierre's assessment as written. Tr. 676. On June 11, 2018, Dr. Rafael Queipo completed an RFC Assessment and found that Segundo could frequently balance and stoop, and occasionally kneel, crouch and crawl. All other findings were the same as Dr. Figueroa's assessment. Tr. 677- 84.

Segundo's claim was denied on reconsideration on July 18, 2018, affirming the initial determination. Tr. 288, 293.

A hearing was held in person on July 18, 2019, before ALJ Livia Morales. Tr. 312-19. Segundo did not claim new conditions or changes in her existing ones.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Segundo testified that her last job was as a network control operator, making reports, repairing computers, and printers. Tr. 74-75. Prior to that, Segundo worked from 2003 to 2006 as a secretary, assisting the manager, coordinating meetings, and carrying five to ten pounds in office supplies. Tr. 75-76. From 1998 to 2003, Segundo also worked as a servicer carrying equipment and discarding biohazard trash. She would lift about fifty to seventy pounds at a time. Tr. 76-77.

When asked about her pain allegations, Segundo testified her hands get swollen, and her joints hurt a lot. Tr. 61-63. However, she stated she could open a door, wash dishes, button up her shirt, and wash and comb her hair. Tr. 63-64. She also complained of plantar fasciitis, for which her rheumatologist injected her with pain medication. Tr. 61. She stated she could not lift her shoulder on bad days but could raise the arm up to ninety degrees. Tr. 61-62. She feels pain in her joints all over her body and she needs to be on medication. Tr. 65. Her rheumatologist also injected her in her back to help with the pain. Tr. 66. The pain went away with the injections, but the relief only lasted a month. Tr. 67-68. Segundo was also taking anti-depression medication. Tr. 65.

Vocational expert ("VE") Maria Leon testified that Segundo's network control operator job was a Specific Vocational Preparation ("SVP") of six, with light physical exertion level as performed by Segundo. The secretary job was an SVP of five, at a sedentary level. The servicer job was an SVP of five, performed at a light exertion level as performed by Segundo. Tr. 77-78.

The ALJ asked the VE if a person with the same age, education (a master's degree and can communicate in English), and vocational experience as Segundo and with the following limitations could perform her past job considering the following: she is limited to light work, except that she can climb stairs/ramps frequently, climb ladders/ropes/scaffolds occasionally, balance frequently, kneel frequently, and stoop/crouch/crawl occasionally. The VE answered that such a person could not perform Segundo's past work but could perform other work in the national economy, such as marker, router, and routing clerk, all SVP of two, light jobs.  Tr. 79.

The ALJ asked the VE whether Segundo could work given the following limitations: the use of handling and fingering frequently and lifting her arms above her shoulders frequently. The VE answered that such a person could perform the jobs of marker, router and routing clerk. Tr. 80. Then, the ALJ added that the person would need to do the job standing or sitting. The VE

testified that such a person could not perform the jobs previously mentioned but could be a ticket taker, an information clerk, or a toll collector. Tr. 80.

For a third scenario, the ALJ added that such a person was off task fifteen percent of the day. The VE testified that such a person could not do any of the jobs previously mentioned. The VE stated that the most someone could be off task was ten percent of the eight-hour day. Tr. 80.

Segundo's counsel asked the VE whether a person with the same limitations the ALJ presented but having only the occasional use of handling, fingering and feeling, could perform the jobs of marker, router, and routing clerk. The VE stated she could not perform those jobs.

On November 14, 2019, the ALJ found that Segundo was not disabled under sections 216(i) and 223(d) of the Act. Tr. 20-34. After determining Segundo was last insured on December 31, 2016, the ALJ made the following findings at Steps One through Five:

(1) Segundo had not engaged in substantial gainful activity during the period of her alleged on-set.

(2) She had the following severe impairments: osteoarthritis of the lower lumbar joint facets, cervical spondylosis with mild stenosis of the spinal canal, bilateral carpal tunnel syndrome, and major depressive disorder.

(3) She did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(4) She retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) but with non-exertional limitations that reduced her capacity for work. She retained the capacity for frequent bilateral handling and fingering, and frequent bilateral overhead reaching. She could occasionally climb ladders, ropes, or scaffolds; occasionally stoop; occasionally crouch; and occasionally crawl. She could frequently climb stairs and ramps, frequently balance and frequently kneel. Mentally, she retained the capacity to perform simple and routine tasks, to make simple work-related decisions, and adapt to changes in this simple work environment. Therefore, she could not perform past relevant work.

(5) However, as per her age, education, work experience, and RFC, Segundo could perform jobs that existed in significant numbers in the national economy.

The Appeals Council denied review and the present complaint followed. Dkt. 1.

## DISCUSSION

Segundo argues there is not substantial evidence in the record to support the ALJ's finding that she could perform her past relevant work and was therefore not disabled. Dkt. 1, p. 2, 8. However, the ALJ found Segundo could *not* perform her past work and discussed whether she could perform other jobs in the economy. Tr. 32-33. Therefore, to the extent that Segundo is arguing that the ALJ erred in finding that she could perform other jobs in the national economy and was therefore not disabled, we will consider the argument. As such, I will determine whether there is substantial evidence to support the ALJ's Step Five determination that, based on Segundo's age, education, work experience, and RFC, there was work in the national economy that she could perform, thus rendering her not disabled within the meaning of the Act.

At Step Five, the claimant has met her burden to show that she is unable to perform past work, and the burden shifts to the Commissioner to come forward with evidence of specific jobs in the national economy that the claimant can still perform. *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). The Commissioner may satisfy this burden by obtaining testimony from a VE. *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). The ALJ is also required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho*, 670 F.2d at 375. In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982).

Segundo claims in general that the ALJ's "decision is predicated on an RFCA . . . of a less than a full range of light efforts without consideration of the need for frequent changes in position and the effects of his various medical diagnoses and their onset of severity." Dkt. 15, p. 6. Specifically, she claims the ALJ erred by failing to have a physical medical advisor present at

the ALJ hearing, and by improperly interpreting raw medical data. She also argues the ALJ gave more weight to the non-examining physicians than to treating physicians. Dkt. No. 15, p. 7, 9.

First, Segundo points to no requirement that a physical medical advisor be present at the hearing before the ALJ. Even if such a requirement did exist, I would be bound to uphold the ALJ's findings of fact if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Regardless, Segundo's claim regarding the medical advisor is waived as there is no development of this argument. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Next, "the law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians." *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991). However, "'controlling weight' is typically given to a treating physician's opinion on the nature and severity of an impairment where it 'is well-supported by medically acceptable and laboratory diagnostic techniques and is no inconsistent with the other substantial evidence' in the claimant's case." *Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D. Mass. 2004) (citing 20 C.F.R §§ 404.1527(d)(2) & 416.927(d)(2)). Furthermore, an ALJ can downplay the weight of a treating physician's assessment of the nature and severity of an impairment when it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and non-examining physicians. 20 C.F.R §§ 404.1527(d)(2)-(4) & 416.927(d)(2)-(4).

Contrary to Segundo's argument that the ALJ gave less weight to her treating physicians, the ALJ's decision reflects that she properly weighed the treating physicians' opinions and progress notes. For example, the ALJ observed that Dr. Nelson, a consulting physiatrist, found Segundo's hand function was normal. However, the ALJ considered the progress notes from Segundo's physiatrist, Dr. Pablo Baez, and rheumatologist, Dr. Jose Raul Rodriguez Santiago, showing that Segundo has some manipulative and reaching limitations. Tr. 28. In terms of mental conditions, again, the ALJ adapted her findings to incorporate Dr. Soto's progress notes. For instance, the ALJ gave partial weight to the consultative psychiatrist, Dr. J.A. Mojica Sandoz, when the doctor assessed that Segundo "would have much difficulty to pay attention to work instructions and procedures and to react in a responsible manner." Tr. 29. The ALJ instead found

that "while the evidence demonstrates complaints (and clinical findings) of diminished attention/concentration, [Segundo's] functioning (per her own statement) and her psychiatrist's notes indicate that she was able to focus on and follow at least simple tasks/instructions." Tr. 29. Thus, the ALJ adapted the RFC to reflect the notes of Segundo's treating physicians. Accordingly, Segundo's argument that the ALJ gave less weight to her treating physicians lacks merit.[5]

Having established that the ALJ properly weighed the treating physicians' opinions, I turn to whether the ALJ's RFC is supported by substantial evidence. It is the ALJ's ultimate responsibility to piece together an RFC assessment based on the record. In doing so, the ALJ must weigh all the evidence and ensure her conclusion rests upon clinical examinations as well as medical opinions. *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 224 (1st Cir. 1981). The RFC is an administrative assessment of a claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, to be determined solely by the ALJ. 20 C.F.R. §§ 404.1520(e), 404.1527(d)(2). 404.1545(a)(1) and 404.1546; SSR 96-8p. An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619 (citing 20 C.F.R. §§ 416.9279(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R §404.1545 (a)(3); *see also Tremblay*, 676 F.2d at 12 (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).

The ALJ thoroughly discussed the persuasiveness of the evidence the ALJ considered to reach the RFC finding and ultimate Step Five determination. The ALJ found that Segundo retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)[6] but that she had

---

[5] The only treating physician to whom the ALJ gave little weight was Dr. Raul Benitez, Segundo's psychiatrist, who simply stated that Segundo was disabled without further explanation. Tr. 32. However, the ALJ did not err in giving such little weight because the determination of whether a person is disabled is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527 ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.")

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567(b). Individuals capable of

non-exertional limitations that reduced her capacity for work. She retained the capacity for frequent bilateral handling and fingering and frequent bilateral overhead reaching. She could occasionally climb ladders, ropes, and scaffolds. She could occasionally stoop, crouch, and crawl. She could frequently climb stairs and ramps, balance, and kneel. Mentally, Segundo retained the capacity to perform simple and routine tasks, make simple work-related decisions and to adapt to changes in this simple work environment. Tr. 25.

Her treating medical sources reflect that Segundo suffered from moderate spasms in her back and neck area. Throughout her physical therapy, she continued with moderate inflammation in the upper trapezius which limited her movement. Tr. 581. Dr. López, her generalist, noted that Segundo could reach overhead. Dr. López also stated that Segundo could not perform repetitive movement of her fingers but an electromyography report by Dr. Baez revealed that her muscle response was normal. Additionally, Dr. Guerra found that she could perform rapid alternating movements. Tr. 84-85. Dr. Figueroa and Dr. Queipo assessed that Segundo had the RFC to lift, carry and push/pull twenty pounds occasionally and ten pounds frequently. They also determined she could sit for a total of six hours and stand or walk for a total of six hours (with normal breaks). However, the ALJ added manipulative limitations to reflect her mild bilateral carpal tunnel syndrome. Tr. 31. The ALJ also found that Segundo's subjective complaints were not wholly consistent with the evidence from her treating physicians. Tr. 32. And, as discussed, substantial evidence supports this finding. While the record as to her physical conditions could direct to a different type of finding, it is at the Commissioner's discretion to ultimately determine what RFC to assign a claimant based on the record, and this court must affirm that finding when, such as here, it is supported by substantial evidence.

Segundo's argument that the ALJ interpreted raw medical data is also without merit. The ALJ is a lay person who is generally unqualified to interpret "raw, technical medical data." *Berrios v. Sec'y of Health & Hum. Servs.*, 796 F.2d 574, 576 (1st Cir. 1986). He may not substitute his "own impression of an individual's health for uncontroverted medical opinion." In other words, an ALJ needs a medical expert to translate medical evidence inito functional terms. *Vega-Valentin v. Astrue*, 725 F. Supp. 264, 271 (D.P.R. 2010); *see also Carrillo Marin v. Sec'y of Health & Hum. Servs.*, 758 F.2d 14, 16 (1st Cir. 1985). However, an ALJ may render a common-

---

performing light work can also perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

sense judgment regarding an individual's capacities, so long as he "does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). Here, the ALJ obtained RFC assessments form medical experts, and along with other evidence in the record, made his RFC determination.

Finally, Segundo's argument that the Appeals Council erred when it refused to review the ALJ's decision despite having received additional pertinent medical evidence is unavailing for several reasons. First, the Appeals Council "need not and often does not give reasons" for its decision not to review a case. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). Further, the Council has broad latitude in deciding which cases will be reviewed. *Id.* (quoting 20 C.F.R. § 416.1470). I note that the "Notice of Appeals Council Action" indicates that "[u]nder our rules we will review your case for any of the following reasons: … We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is reasonable probability that the additional evidence would change the outcome of the decision." Tr. 1-2. Agency policy provides that the Appeals Council only considers additional evidence that relates to the period on or before the date of the hearing decision, if there is reasonable probability that the additional evidence would change the outcome of the decision and it is accompanied by an explanation showing good cause for not submitting it prior to the hearing. 20 C.F.R. § 404.970(a)(5) & (b). The Appeals Council found that the new evidence submitted did not show a reasonable probability of changing the outcome of the decision. Tr. 2. Therefore, this court finds that the Appeals Council adequately considered the required evidence and did not err in declining to review the ALJ's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2023.

                                                    *s/ Bruce J. McGiverin*
                                                    BRUCE J. MCGIVERIN
                                                    United States Magistrate Judge